The first case today will be No. 162388, Yolanda Olmos-Colaj et al. v. Jefferson B. Sessions. Good morning, Your Honors. Good morning. My name is Andine Sniffen, and I represent the petitioners Yolanda and Consuelo Olmos-Colaj. I would ask to reserve two minutes for everybody, Your Honors. Thank you. To begin, one of the cornerstones of due process is the fundamental fairness of a hearing before a neutral and impartial arbiter. That was not what petitioners in this case got. The immigration judge was insisting on an expeditious conclusion of these proceedings from the very first day of testimony. Was there three days of testimony? There were three days, Your Honor. Throughout the three days, from the very beginning until the end, the judge insisted that he wanted these proceedings concluded. And this limited the petitioners' ability to present their psychological expert witness, Dr. Boyatt. From the very first day, the judge acknowledged at the end of first day's testimony that there were still 40 minutes left of unused time. At that time, petitioners could have presented Dr. Boyatt's testimony and, in fact, expressed that they wanted to present Dr. Boyatt's testimony. Instead, the immigration judge proceeded to schedule a second day of testimony. The same thing happened on the second day of testimony. There were two respondents here and two expert witnesses. At the end of the second day of testimony, the judge again scheduled a third day, knowing that the petitioners had Dr. Boyatt ready to testify. By the third day, petitioners' counsel got the message. And when the judge suggested that she proffer the written affidavit in lieu of the expert's telephonic testimony, counsel didn't object. What's the prejudice? The prejudice, Your Honor, is that the judge found that the petitioners did not qualify for the exception to the filing deadline, premised on the fact that he found their testimony to be abusive. You're looking at an affidavit rather than taking live testimony from a second expert who largely said what the first expert said? That's prejudice? No, Your Honor. Okay, but what was it? The first expert testified as to the physical injury that one of the petitioners had received. That was the purpose of his testimony. The second expert, whose affidavit was not referenced in any part of the decision, testified as to the mental states of the petitioners. But this was the second filing. They changed their argument on the second time they filed? This was an amended application. What they did was expand upon the first explanation for why they had failed to file. Am I right that the prejudice you're talking about is prejudice that would enable you to get past the jurisdictional bar to raising the asylum claim? But if you, and I understand that asylum is different than withholding a removal, but withholding a removal is better than having to go back? Yes, that's correct, Your Honor. Withholding a removal is not subject to the jurisdictional bar. Anyway, that's a live claim. That's correct. Okay, so could you just, unless my colleagues have more on the jurisdictional question, could you just address the merits of the withholding of a removal claim? Yes, Your Honor. With respect to past persecution, I believe that the evidence needs to be looked at in the context of the circumstances that were present at the time that petitioners were living in Guatemala. They were both indigenous Mayan women. They were children that lived through the genocide of the 80s and early 90s. Many of their family members were killed or tortured. They knew this growing up as children. In the case Osorio-Quino, we looked at the harm that children suffer is different from the harm that adults suffer. Subsequent to that, the 1997 assault was, again, on account of their ethnicity and their gender. But only one of the sisters had any physical issue. One had the assault where she was hit in the head and she ended up with a scar on her head. But the other one had none. That's correct. But the other one was present at the time and was also threatened. Threats can also be the basis for a claim for past persecution. Am I right that they both were subject to, would you call them threats, or they say humiliation up until the time of the attack? Up until the time of the attack, they were constantly harassed. So there's harassment, then there's an attack where they're both present, and it's an attack on their store? Yes. Did they jointly own the store? The owner of the store was Consuelo, and her sister Yolanda worked in the store. So it's an attack on her store, and the sister's the one who's physically injured and the store is smashed. Yes, that's correct. So Consuelo owns the store, her store is physically attacked. Yes. And then both received death threats following that attack? Yes. The sisters lived together when Consuelo was still in Guatemala, and they both received these threats. They were both threatened that the rest of their family members, by this time Consuelo had a family of her own that she had to take into consideration. There's a follow-up threat when one of them has come to the United States. Is that threat directed at Consuelo? The follow-up threat was directed at Yolanda. Consuelo came to the U.S. after she was assaulted in 2000 when she was working as a teacher. I understood the record differently. It was that Yolanda was mistaken for Consuelo and the threat was not to Yolanda, it was to Consuelo as a result of a mistake. Yes. Is that correct? Yes, Your Honor, that is correct. What she meant was the threat was directed at Yolanda, but it was given to Consuelo. Yes, the threat directly went to Yolanda, but it was on account of her similar features to her sister, Consuelo. Consuelo was no longer there. Had Consuelo been there, the threat would have been directed at Consuelo. So in that sense, we believe we have made out a claim of past persecution. Am I right that the BIA did not adopt? If the BIA doesn't seem to have adopted the IJ's ruling, it simply has decided that it's finding that there was not past persecution was not clear error. Yes. And if I'm reading the BIA decision right, the BIA seems only to base that on its conclusion about the severity of the harm. It doesn't seem to address governmental action or inaction, relocation, or any of those issues that the IJ also addressed. That's correct. They are not addressing that, but we would argue that there is evidence in the record that does address that, even though the IJ... Maybe I'm missing it, but why is that wrong? In other words, if the BIA's severity ruling can't stand, don't we have to vacate and remand? If the BIA's severity ruling can't stand, I believe you can still, yes, you could remand it. There's nothing else the BIA has given no other basis for denying or withholding of a removal claim, at least as I read it. Yes. Now, with respect to a well-founded fear of future persecution, there's also evidence in the record that would compel FactFinder to reverse the judge's finding on that point. There's direct evidence from the director of the Guatemalan Human Rights Commission, as well as from an ombudsman of human rights that one of the petitioners worked for or volunteered for for several years, indicating that as Guatemalan indigenous Mayan women, they were targeted with threats and harm. But they've been out of the country for many, many years. The situation has changed somewhat. There are other family members who are still there, if I understand it. There are some family members... And without any difficulty? Sorry? Without any difficulty? Well, some family members are still there, and some family members have faced difficulty. They have a large family, Your Honor. In this record? Yes, I believe there are death certificates of extended family members who, after their departure from Guatemala, have faced harm.  Thank you, Your Honor. Good morning, Your Honors. Ann Wilhoff, a respondent in the United States Attorney General Sessions. May it please the Court. Your Honor, this case is before the Court on an extremely deferential substantial evidence standard of review. You know, let's cut to the chase. Let's get to the withholding of removal claim. And do you agree with Judge Barron's characterization of the BIA decision that it's actually quite narrow and does not reach all of the grounds that the immigration judge reached? Well, respectfully, Your Honors, I don't agree. Could you show me where in the BIA they do address the broader issues? Sure. Yes, Your Honor. I believe that, I'll refer the Court to Administrative Record at page 5. The second paragraph goes on and on about how the aliens did not show, either in the context of past persecution or future, that there was gun control. On past persecution, as I read the BIA, they don't adopt the IJ's ruling. They simply say that IJ did not commit clear error in finding no past persecution. And then the reason it gives is it says that harm was not severe enough to rise the level. Then it cites about six cases giving the standard for how severe harm has to be. That's correct, Your Honor. Certainly not severe enough is a despised ruling. What else do they rule? As to past persecution. Okay, past, right. If I may have just one moment. My reading is that they, in fact, did find no governmental participation by finding that the police were there to help them and, in fact, responded. There's no governmental action with respect to either the past or the future. That's true with respect to the incidents that occurred when she was a child during the dislocation. But where is that with respect to, in the BIA's decision, where is that with respect to past persecution with respect to the attack in 1997? I know the IJ did it. The IJ had a pretty comprehensive opinion. But I just don't see it in the BIA's decision. Certainly the very first sentence on administrative record, page 4, attorney of the merits, we find no error in alternative finding that she didn't show past persecution. That's an adoption of the reasoning, I believe it is. What's the next sentence? Well, then they speak about the severity, as you noted. So why isn't the fair reading? It's the same pages. Why isn't the fair reading of that that the ground that they're saying the IJ got right was that the harm was not severe enough? There's nothing else in the BIA decision that addresses any other issue that the IJ reached. I'm not sure I agree with that. Well, I guess I'm just asking counsel right now. Certainly the agency in adopting the ruling on past persecution, it encompassed two dispositive grounds in the IJ's decision. There's actually, I would agree that they didn't expand upon the IJ's... They didn't extend any case law. The only thing that they reference, the BIA references, is the severity of the harm. It's like six cases. So what would lead you to think that BIA also is agreeing with its other ruling? Well, again, in agreeing with the dispositive ruling of past persecution, I would submit that they're adopting the rationale as well. And there's certainly nothing to indicate otherwise. And, in fact, when the BIA talks about future persecution, clearly one of the many dispositive rulings is that there is no evidence the government would condone, acquiesce, participate in. That alone is dispositive of her claim. That is entirely dispositive of this claim. Of past persecution claim? Well, clearly the agency... Are you saying that there was no government action or inaction with respect to the 1997 incident in the BIA's decision? The BIA adopted the IJ's findings, I believe. And the fact that it didn't write an exegesis on all the reasoning given, I think that both decisions are before the court. Sometimes the BIA says we adopt the IJ's decision. Here, it just never says that. It says there was no clear error in its ruling on past persecution, then gives its argument about severity of treatment, which is only one of the issues the IJ reached. So it just seems odd to conclude the BIA must have been adopting the other things it didn't address. Well, the immigration judge did such an extraordinarily thorough, extensive job, I don't know that there was really a need for the board to do so. So why did it specially discuss severity of treatment, then? I'm sorry? Why did it specially discuss severity of treatment, then? Probably, and I can only surmise why they only did that. Me too. Well, I think that was the more difficult dispositive ruling to reach, the severity. It's always a difficult case when the argument is, well, there was a beating, but it wasn't bad enough. So I think that that warranted perhaps more discussion. The fact that the police assisted her is so fraught in this record, I don't know. It's so, I mean, certainly it's pointed out by the immigration judge and the board when it's discussing, when it discusses future persecution, it does mention how the police assisted her regarding those incidents in the past. It's in there, it's not in that same paragraph, but again, I'm surmising, but I don't, I think it was just a factifying statement. Okay, again, just on severity, what's your argument as to why the BIA is right on the severity point? Well, I mean, I think it's entirely in line with the, this court's extensive cases about isolated incidents. As far as, it was obviously, I think that the harm that they suffered in the past, as you noted, when you read their testimony, the word we were harassed and discriminated against is mentioned so many times I could hardly even count it. That was what they were claiming, harassed and intimidated. They were saying that's what happened to the lead up to the attack on the store, in which the store was destroyed or smashed. One of the people was hit on the head. There was lots of blood. She got stitches, and then there were death threats that followed. That's their claim. That, again, this court has numerous cases. I had understood that the police came to her aid. They were ready to prosecute the people who hit her in the head with the rock. The death threats came as to her testifying in a criminal proceeding, that if she testified against these men, they threatened to kill her, and at that point she decides she is not going to testify. Is that what happened? Yes, Your Honor. That's a very accurate rendition of the facts in this case. So just on severity of harm, just so I understand, the position is that's not severe enough? Again, that's a factual finding. To find that, she would have to point to evidence that compels the conclusion that what occurred to her was in fact severe enough to be persecution. And my position is that is not. Why not? Because it was an isolated incident of obviously an unpleasant nature, but there's cases in this court where there's worse beatings and more frequent severity. What's the best case you've got for that? I would say, I could cite you a couple. Anacassis v. Holder, 602-Fed-3rd-14. Pelaya v. Holder, 750-Fed-3rd-56. Sumarto v. Holder. That case had two incidents of beating and stabbing. Were there death threats? I'm sorry? Were there death threats? Well, you're asking me about her beating. I'm focusing on that. No, I'm asking about the claim she's making about past persecution, which was that there was harassment, followed by an attack on the store, followed by a physical attack on her, followed by death threats against both. There was testimony regarding death threats on two occasions, one to Consuelo, one to Yolanda, unrealized death threats, and they were directly pertaining to, you better not testify in court against me or I'll kill you. And the second threat was long after Consuelo had left. It was mistaken identity, and the threat was pertaining to that Yolanda suffered was more of a, I'm going to get you for having made me sit in jail for all this time. Again, nothing occurred subsequent to that. She remained in the country, Yolanda remained in the country for almost two years. After that threat, it was never realized. In inappropriate cases, threats can rise to the level, of course, inappropriate cases. And the question is factual, what did they do in this case? So why not here? That's my question. There's two threats that were not so sufficiently pervasive and ongoing as to have risen to the level of persecution. There's two threats. Each person received one threat. The cases that find threats are so severe that the threats alone constitute persecution. I believe Your Honor will find the facts far more egregious than the two threats that were discussed in this case that were unrealized. And, in fact, she remained in the country for two years after the threat and never had another threat again. So the evidence has to compel the conclusion that these facts, you can conclude nothing but that these threats were so pervasive it was persecution. It's a burden to show that. And on these facts, they submit that this does not compel that conclusion. The conclusion the Board reaches is entirely well-grounded in this record, based on the facts and the case law in this circuit. Thank you. Thank you. We'll hear a rebuttal. Your Honor, it's the fact that the threats made against the petitioners were unrealized should not be held against them. Even the immigration judge acknowledged that Consuelo's decision not to go forward with the prosecution may have been a reasonable one, given her fears at the time. So we would argue that the threats need to be taken in the context in which they occurred. All of the events leading up to the assault would indicate that these individuals had the desire and had the means to cause significant harm and possibly even kill Consuelo and her family members. But they're stealing from her store. They're refusing to pay. She protests. They then react to her protests. Isn't this actually what happened? If they didn't yell slurs about her ethnicity, this entire incident might be persecution. But it might not be if you consider the context of everything. Respectfully, Your Honor, they did, in fact, yell slurs at them. Indios and other slurs that refers to their ethnicity as indigenous women. I thought her testimony was that that had been happening up until the time they came in the store and then continued when they came into the store. That's correct. So, again, it's an escalation of behavior against petitioners that would lead one to believe that they have the means and the desire to carry out the threats that they are. Could you just address the government's argument about the governmental inaction point and whether the BIA adopted the IJ's finding on that score with respect to the 1997 attack? I would say that Your Honor is correct in indicating that if the BIA found it necessary to address the severity of the harm and failed to address the government action or inaction, that the silence speaks loudly. Did the BIA address it in the course of the future persecution claim, though? No, I would say they did not address it at all. That's just the IJ that addressed it throughout. Yes. Thank you, Your Honors. Thank you.